Daniel N. Ballard, SBN 219223
E-mail: daniel.ballard@bullivant.com
BULLIVANT HOUSER BAILEY PC
1415 L Street, Suite 1000
Sacramento, California 95814
Telephone: 916.930.2500
Facsimile: 916.930.2501

Attorneys for Plaintiff
ERIC KIMMEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIC KIMMEL, | Case No.: C 07-2751 CRB |
| Plaintiff, | COMPLAINT FOR: |
| vs. | 1. COPYRIGHT INFRINGEMENT, |
| GUGGENHEIM ENTERTAINMENT, LLC, SCOTT GUGGENHEIM, STEPHEN GUGGENHEIM, and SHANNON GUGGENHEIM, | 2. MISAPPROPRIATION OF THE RIGHT OF PUBLICITY, 3. FALSE ENDORSEMENT, and 4 UNFAIR COMPETITION |
| Defendants. | |

Plaintiff Eric Kimmel (hereinafter "Kimmel") by his attorney, complains and alleges as follows:

**INTRODUCTION**

1. This action arises due to SCOTT GUGGENHEIM, STEPHEN GUGGENHEIM, SHANNON GUGGENHEIM, and GUGGENHEIM ENTERTAINMENT, LLC, (collectively "Defendants") unlicensed adaptation of Kimmel's copyrighted book into, at least; a script, a play, numerous musical compositions, and numerous sound recordings. Defendants have distributed the script, performed the play, and sold compact discs of the sound recordings without permission from, or paying any compensation to, Kimmel

2. Kimmel brings this complaint for Copyright Infringement, Misappropriation of the Right of Publicity, False Endorsement, and Unfair Competition to seek redress for

1

Defendants' unlicensed use of Kimmel's copyrighted work and for Defendants' unlicensed use of Kimmel's identity and reputation to promote and sell the play and the sound recordings, and to market and promote their various other business services.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §§1338(a) and 1331. The Court also has subject matter jurisdiction under 28 U.S.C. §1332 as the amount in controversy exceeds $75,000 and complete diversity exists. The Court has jurisdiction over the related state law claims under 28 U.S.C. §1338(b) and 28 U.S.C. §1367.

4. Personal jurisdiction over all Defendants is appropriate because each is a resident of the State of California.

5. Venue is proper under 28 U.S.C. §1391(b) because Defendants reside in this district, a substantial part of the events giving rise to Kimmel's claims occurred in this district, and Defendants maintain their principal place of business in this district.

## THE PARTIES

6. Plaintiff Eric Kimmel ("Kimmel") is an individual residing in Multnomah County, Oregon and is the author of The Jar of Fools: Eight Hanukkah Stories from Chelm.

7. Defendant Guggenheim Entertainment, LLC is a limited liability company, organized under the laws of the State of California, having a principal place of business at 1165 Bucknam Court in Campbell, California.

8. Defendant Scott Guggenheim is an individual who, on information and belief, resides in Santa Clara County, California and is an owner, member, and employee of Defendant Guggenheim Entertainment, LLC.

9. Defendant Shannon Guggenheim is an individual who, on information and belief, resides in Santa Clara County, California and is an owner, member, and employee of Defendant Guggenheim Entertainment, LLC.

10. Defendant Stephen Guggenheim is an individual who, on information and belief, resides in Santa Clara County, California and is an owner, member, and employee of Defendant Guggenheim Entertainment, LLC.

### KIMMEL'S WORK

11. Kimmel is the author of the book <u>The Jar of Fools: Eight Hanukkah Stores from Chelm</u> ("<u>The Jar of Fools</u>"). Kimmel owns the copyright to <u>The Jar of Fools</u>. His copyright is valid and subsisting and is registered with the United States Copyright Office under registration certificate number TX-5-302-608, which became effective on November 16, 2000. <u>The Jar of Fools</u> consists of short stories, each set in the fictional town of "Chelm" and each telling a heartwarming and endearing tale relating to Jewish tradition. The book was first published by Scholastic Inc. in or around November 2001.

### DEFENDANTS' BUSINESS

12. Defendant Guggenheim Entertainment, LLC boasts that "[f]or over 15 years, Guggenheim Entertainment has provided superlative entertainment, marketing, and support services for both corporate and private functions." *See*, guggyent.com/about/index.html.[1]

13. On information and belief, "Guggenheim Entertainment" consists of Defendants Scott Guggenheim, Stephen Guggenheim, and Shannon Guggenheim (the "Individual Defendants"). *See*, guggyent.com/about/comphistory.html (the "three Guggenheims" left the non-profit world in 1997 to form "the perfect musical theatre producing trio.").

14. Defendant Guggenheim Entertainment, LLC offers as business services "everything from turn-key programming to customized events designed just for your organization. We will tailor each event to fit within your budget and help you plan and design every detail." *See*, guggyent.com/about/index.html.

15. Among the business services offered by Defendant Guggenheim Entertainment, LLC are "the design, development and presentation of original monthly holiday programming and special events for retail centers throughout California; serving as entertainment coordinators and booking agents for private and corporate functions; producing, directing, and designing regional theatre; developing, administering, and implementing educational outreach in the visual and creative arts; and creating marketing collateral and publications, web site design, and press representation." *See*, guggyent.com/about/comphistory.html.

---

[1] Each webpage cited herein was last visited on May 24, 2007.

16. Defendant Guggenheim Entertainment, LLC identifies nineteen shopping malls and thirty other businesses and organizations in its client list and informs prospective clients that it also has "reach[ed] an audience of over one million with over 90 professionally produced musicals and plays and over 50 themed events and conferences throughout the state." *See,* guggyent.com/about/clientlist.html.

17. In addition to offering these business services—and in order to promote these business services—Defendant Guggenheim Entertainment, LLC purportedly established "a division" of the company called The National Jewish Theatre Festival. On information and belief, "The National Jewish Theatre Festival" is not a separate legal entity apart from Defendant Guggenheim Entertainment, LLC but is rather simply a label used by Defendant Guggenheim Entertainment, LLC to brand a theatrical production called The MeshugaNutcracker!.

**DEFENDANTS' INFRINGING WORKS**

18. Defendant Guggenheim Entertainment, LLC contends that members of the San Francisco Bay Area Jewish community and its leaders "were crying out for a place Jews could go for an entertaining and Jewish experience" during the Christmas holiday season. *See,* njtf.org/production.html.

19. The Jewish community leaders purportedly approached Defendants Scott Guggenheim and Shannon Guggenheim to "assist them with the development of a program they could host on Christmas Day." These Defendants were "happy to take up the challenge." *See,* njtf.org/production.html.

20. Defendant Guggenheim Entertainment, LLC admits that, in 2002, Defendants Scott Guggenheim and Shannon Guggenheim "developed the script and workshopped the material that would include a storyline incorporating works by renowned author Eric A. Kimmel; a production design based on the artistry of Mordicai Gerstein; and a throughline depicting the timeless antics of the citizens of the fictional town of Chelm." *See,* njtf.org/production.html.

21. Defendants' efforts resulted in a play called The MeshugaNutcracker!, "the first

musical of its kind; one which celebrates Chanukah while weaving together a timeless score, original lyrics and eight poignant and witty stories." *See*, njtf.org/production.html.

22. The MeshugaNutcracker! script is based upon The Jar of Fools and contains numerous and substantial verbatim excerpts from the book. *See*, **Exhibit A**. The script, play, and sound recordings of The MeshugaNutcracker! are derivative works based upon and derived from The Jar of Fools.

23. Defendants' also wrote and distributed the lyrics to approximately fourteen songs based upon and derived from the stories published in The Jar of Fools. Each such musical composition is performed in The MeshugaNutcracker! play and is a derivative work based on The Jar of Fools and other works. *See*, **Exhibit B.**

24. Defendant Guggenheim Entertainment, LLC contends that "in December 2003, the World Premiere of "The MeshugaNutcracker!" played to packed houses, delighting Jew and Gentile alike. Since then the crazy cast of Chelmniks has toured California giving audiences in Berkeley, Palo Alto, Sacramento, San Francisco, San Jose and Los Angeles a fun-filled musical theatre experience that celebrates the miracle of the oil and the heroes that made it happen." *See*, www.njtf.org/production.html.

25. Defendants publicly performed The MeshugaNutcracker! approximately 40 times during the 2003, 2004, 2005, and 2006 Chanukah seasons. Each performance was different in that each performance was a live performance with variations among the performances, each was performed in front of a different audience, the actors were not the same for each performance, the performances were held in various venues, and the script was not the same for each performance. The ticket prices charged by Defendants for these performances ranged from approximately $15 to $43.

26. In the 2004 season playbill for The MeshugaNutcracker!, Defendant Guggenheim Entertainment, LLC identifies sixteen "sponsors" of the play. *See,* **Exhibit C**. In the 2006 season playbill for The MeshugaNutcracker!, Defendant Guggenheim Entertainment, LLC admits that numerous and specific other "businesses contributed greatly to the success of this year's Chanaukah festival." *See,* **Exhibit D**. On information and belief, Defendants' received

1 monetary contributions and other resources from, at least, these identified sponsors and businesses to finance, produce, promote, and perform The MeshugaNutcracker! during the 2004, 2005, and 2006 seasons.

27. Defendants recorded the songs performed in The MeshugaNutcracker! and have reproduced, distributed, and sold those sound recordings in compact disc form as the soundtrack to The MeshugaNutcracker!. The price charged by Defendants for each copy of the compact disc was approximately $25.

28. Defendants have received substantial publicity in the press and elsewhere as a result of their performances of The MeshugaNutcracker! and, on information and belief, that publicity has significantly increased Defendant Guggenheim Entertainment, LLC's business opportunities, revenue, and profits.

**THE DISPUTE**

29. Kimmel never granted Defendants permission to use, reproduce, distribute, perform, or adapt The Jar of Fools before Defendants' created and publicly performed The MeshugaNutcracker! in 2003.

30. From approximately mid-2004 to mid-2006, Kimmel and Defendants discussed entering into a license agreement to permit Defendants to use The Jar of Fools to create and perform The MeshugaNutcracker!.

31. In or around October 2004, an arrangement was contemplated, but not finalized, between Kimmel and the Defendants relating to the Defendants' adaptation and performance of The Jar of Fools as a theatrical production.

32. In July 2006, the parties' negotiations reached an impasse. Also in July 2006, the Individual Defendants, doing business as "Guggenheim Entertainment," formed a limited liability company called Guggenheim Entertainment, LLC, a named defendant in this action.

33. In correspondence to Kimmel in January 2007, Defendant Scott Guggenheim recounted the parties' past licensing negotiations and admitted that "[a]fter numerous emails and phone calls nothing was ever agreed upon … ." *See*, **Exhibit E**.

34. None of the Defendants' performances of The MeshugaNutcracker! were with the

permission of Kimmel. None of the Defendants' reproductions and distributions of the <u>The MeshugaNutcracker!</u> script were with the permission of Kimmel. None of Defendants' sales of the compact discs containing the soundtrack to <u>The MeshugaNutcracker!</u> was with the permission of Kimmel.

## CLAIM ONE
## COPYRIGHT INFRINGEMENT
### (By Kimmel Against All Defendants)

35. Kimmel repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 38.

36. <u>The Jar of Fools</u>, and each story contained therein, constitutes an original work of authorship and copyrightable subject matter. Kimmel's copyright to <u>The Jar of Fools</u> is, and was at all times noted herein, valid and subsisting.

37. Before creating <u>The MeshugaNutcracker!</u>, Defendants had access to <u>The Jar of Fools</u> and each Individual Defendant knew that <u>The Jar of Fools</u> was protected by copyright.

38. Defendants directly, contributorily, and vicariously infringed Kimmel's copyright in <u>The Jar of Fools</u> by, at least; (1) adapting <u>The Jar of Fools</u> to create <u>The MeshugaNutcracker!</u>, (2) creating and performing musical compositions based on and derived from <u>The Jar of Fools</u>, (3) reproducing in <u>The MeshugaNutcracker!</u> script the protected elements of, and expression of ideas within, <u>The Jar of Fools</u>, (3) distributing copies of <u>The MeshugaNutcracker!</u> script, (4) publicly performing <u>The MeshugaNutcracker!</u>, and (5) reproducing and distributing compac discs that contain the sound recordings of the musical compositions performed in <u>The MeshugaNutcracker!</u>.

39. Defendants' conduct as described herein was performed without Kimmel's permission, license, or consent and constitutes willful copyright infringement in violation of 17 U.S.C. §§ 101 *et seq*. Most of Defendants' infringing conduct as described herein has occurred within the immediate past three years.

40. Each Individual Defendant personally participated in the infringing acts described herein, supervised those activities, and has a financial interest in those activities.

41. As a result of Defendants' conduct as described herein, Kimmel has been damaged and has suffered and will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

### CLAIM TWO
### MISAPPROPRIATION OF THE RIGHT OF PUBLICITY
(By Kimmel Against All Defendants)

42. Kimmel repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 41.

43. Defendants knowingly and intentionally used the name and identity of Kimmel, a well-known author, without his permission or consent to advertise and promote The MeshugaNutcracker! play and the sale of compact discs containing the play's soundtrack.

44. Defendants' used Kimmel's name and identity in, among other places, Defendants' press releases and other marketing material for The MeshugaNutcracker!, on Defendants' National Jewish Theatre Festival website at njtf.org, and in each playbill distributed at each performance of The MeshugaNutcracker!.

45. Defendants' also falsely asserted in their marketing material that Kimmel "collaborated" in the creation of The MeshugaNutcracker!.

46. By engaging in the acts described herein, Defendants benefited from Kimmel's reputation in the literary and Jewish communities. This unearned benefit contributed to Defendants' ticket sales for The MeshugaNutcracker!, financial and other support to Defendants from community and corporate sponsors, and Defendants' sales of the compact discs containing the play's soundtrack.

47. Defendants' conduct as described herein directly harmed Kimmel and violates Kimmel's common law rights of publicity and privacy and his rights under California Civil Code section 3344. Unless this conduct is enjoined, Kimmel will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

///

///

///

## CLAIM THREE
### FALSE ENDORSEMENT AND FALSE ASSOCIATION
(By Kimmel Against All Defendants)

48. Kimmel repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 47.

49. Kimmel has an economic interest in controlling the commercial exploitation of his identity. Moreover, Kimmel has an interest in the exploitation of, and owns the exclusive right to exploit, The Jar of Fools through merchandising opportunities. Each of these interests is akin to the right of a trademark owner to control the exploitation of his or her trademark.

50. Defendants falsely asserted in publicly disseminated marketing material that they were granted permission by Kimmel and his publishers to adapt The Jar of Fools into The MeshugaNutcracker! and to perform the play, and that Kimmel "collaborated" in the creation of the play. None of these assertions is true.

51. Defendants' published these assertions in marketing material for at least three seasons of the play with knowledge that the assertions were false and with the intention to maliciously trade off Kimmel's reputation and goodwill. This case is, therefore, exceptional.

52. These false assertions by Defendants, and their other conduct as described herein, falsely suggests that Kimmel is affiliated, connected, or associated with Defendants and The MeshugaNutcracker! and that Kimmel sponsors, endorses, or approves of The MeshugaNutcracker! and the compact disc containing the play's soundtrack.

53. Each Individual Defendant personally participated in the infringing acts described herein, supervised those activities, and has a financial interest in those activities.

54. Defendants' conduct as described herein directly harmed Kimmel and constitutes direct, contributory, and vicarious false endorsement and false association in violation of 15 U.S.C. §1125(a) and common law. Unless this conduct is enjoined, Kimmel will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

///

///

///

## CLAIM FOUR
## UNFAIR COMPETITION
### (By Kimmel Against All Defendants)

55. Kimmel repeats and incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 54.

56. Defendants' misappropriation, copying, imitating, and infringement of Kimmel's name, identity, and work of authorship (1) to sell admission to The MeshugaNutcracker!, (2) to sell compact discs containing the play's soundtrack, and (3) to promote Defendants' other businesses trades upon Kimmel's goodwill and reputation, misappropriates Kimmel's right to commercialize his literary work, and has resulted, and will continue to result, in Defendants' unlawfully obtaining the benefit of Kimmel's goodwill and reputation and commercial opportunities.

57. Defendants' conduct as described herein constitutes common law unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Kimmel prays that:

1. The Court award Kimmel monetary damages for Defendants' numerous and various copyright infringements of The Jar of Fools which includes, at least, Defendants' creation and performances of The MeshugaNutcracker!, Defendants' creation, reproductions, and distributions of the play's script, and Defendants' creation, performances, and sales of all musical compositions and sound recordings derived from The Jar of Fools;

2. The Court award Kimmel his actual damages caused by each of Defendants' copyright infringements;

3. The Court award Kimmel all of the Defendants' direct and indirect profits gained by their copyright infringements;

4. The Court enjoin Defendants from directly or indirectly infringing Kimmel's copyright in The Jar of Fools and from exploiting any works derived or copied from this work of authorship or to participate or assist in such activity;

5. That Defendants file with the Court and serve on Kimmel, within thirty days after

service of the entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

6. The Court award punitive damages under California Civil Code section 3344;

7. The Court award Kimmel his damages, Defendants' profits, the costs of this action, and Kimmel's attorneys' fees pursuant to 17 U.S.C. section 1117;

8. The Court order the destruction of Defendants' marketing and other material related to The MeshugaNutcracker!, which refers to Kimmel pursuant to 17 U.S.C. section 1118;

9. The Court find that each Defendant is jointly and severally liable to Kimmel;

10. The Court award Kimmel prejudgment interest on all amounts awarded;

11. That the Court grant such other or further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims set forth above.

DATED: May 24, 2007

BULLIVANT HOUSER BAILEY PC

By: _____
Daniel N. Ballard
Attorneys for Eric Kimmel

4245841.3