1 | MAYER, BROWN, ROWE & MAW LLP
IAN N. FEINBERG (SBN 88324)
2 |    *ifeinberg@mayerbrownrowe.com*
JOSHUA M. MASUR (SBN 203510)
3 |    *jmasur@mayerbrownrowe.com*
Two Palo Alto Square, Suite 300
4 | 3000 El Camino Real
Palo Alto, California 94306-2112
5 | Telephone: (650) 331-2000
Facsimile:  (650) 331-2060
6 |
7 | Attorneys for Defendants and Counter-
Complainants GUGGENHEIM
ENTERTAINMENT, LLC, SCOTT
8 | GUGGENHEIM, STEPHEN GUGGENHEIM,
and SHANNON GUGGENHEIM
9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **NORTHERN DISTRICT**

12 | **SAN FRANCISCO DIVISION**

13 |

ERIC KIMMEL,                                    Case No. C 07-02751 CRB

        *Plaintiff and Counterdefendant,*      **ANSWER AND
                                                COUNTERCOMPLAINT**
    *v.*
                                                **DEMAND FOR JURY TRIAL**
GUGGENHEIM ENTERTAINMENT, LLC,
SCOTT GUGGENHEIM, STEPHEN
GUGGENHEIM, and SHANNON
GUGGENHEIM,

        *Defendants and
        Counterclaimants.*

      Defendants and Counterclaimants GUGGENHEIM ENTERTAINMENT, LLC,

SCOTT GUGGENHEIM, STEPHEN GUGGENHEIM, and SHANNON GUGGENHEIM

(collectively, "Defendants") hereby answer the Complaint by, and counterclaims against,

Plaintiff and Counterdefendant ERIC KIMMEL ("Kimmel" or "Plaintiff"), as follows:

      1.    Defendants admit that, under one or more express and/or implied licenses, or

based on promises thereof, from Plaintiff, they have created a stage musical titled *The*

*MeshugaNutcracker!*, portions of which were inspired by or based on stories contained in a book

1  titled *The Jar of Fools* that, on its face, attributes authorship to Plaintiff, but specifically deny

2  that Stephen Guggenheim played any role in the creation of any textual portion of the script for

3  *The MeshugaNutcracker!*.  Defendants admit that Guggenheim Entertainment, LLC, Scott

4  Guggenheim, Shannon Guggenheim, and/or Stephen Guggenheim have performed *The*

5  *MeshugaNutcracker!*.  Defendants admit that Guggenheim Entertainment, LLC, Scott

6  Guggenheim, and Shannon Guggenheim (collectively, "Guggenheim Entertainment") have

7  distributed approximately 200 compact discs (of which approximately 50 were sold) containing a

8  cast recording of certain musical compositions that are part of *The MeshugaNutcracker*.

9  Defendants further admit that they have not, to date, paid any royalties to Plaintiff under the

10  licenses.  Except as expressly admitted, Defendants deny the allegations of Paragraph 1 of the

11  Complaint.

12      2.    Defendants admit that Plaintiff's Complaint purports to state actions for

13  Copyright Infringement, Misappropriation of the Right of Publicity, False Endorsement, and

14  Unfair Competition.  Except as expressly admitted, Defendants deny the allegations of Paragraph

15  2 of the Complaint.

16      3.    Defendants admit that 28 U.S.C. § 1338(a) grants the United States District

17  Courts exclusive original jurisdiction over any civil action purporting to arise under the

18  Copyright Act, including this action, and that 28 U.S.C. § 1331 grants the United States District

19  Courts "original jurisdiction of all civil actions purporting to arise under the Constitution, laws,

20  or treaties of the United States," including the First and Third Claims of the Complaint.

21  Defendants admit that there is complete diversity between Plaintiff and Defendants.  Except as

22  expressly admitted, Defendants deny the allegations of Paragraph 3 of the Complaint.

23      4.    Defendants admit the allegations of Paragraph 4 of the Complaint.

24      5.    Defendants admit the allegations of Paragraph 5 of the Complaint.

25      6.    Defendants are informed and believe that Plaintiff is an individual residing at

26  2525 Northeast 35th Avenue, Portland, Oregon 97212.  Defendants lack sufficient knowledge or

27  information to form a belief as to the truth and extent of Plaintiff's alleged authorship of the

28  works contained in *The Jar of Fools: Eight Hanukkah Stories from Chelm* ("*The Jar of Fools*"),

but note that the "Author's Note" to *The Jar of Fools* expressly admits that the book contains "retellings of traditional Yiddish tales" and "adaptations of stories from other traditions," and that Paragraph 11 of the Complaint admits a traditional basis for each story contained in *The Jar of Fools*.  Except as expressly admitted, Defendants deny the allegations of Paragraph 6 of the Complaint.

7.     Defendants admit the allegations of Paragraph 7 of the Complaint.

8.     Defendants admit the allegations of Paragraph 8 of the Complaint.

9.     Defendants admit that Shannon Guggenheim resides in Santa Clara County, California and is an owner and member of Guggenheim Entertainment, LLC.  Except as expressly admitted, Defendants deny the allegations of Paragraph 9 of the Complaint.

10.     Defendants admit that Stephen Guggenheim resides in Santa Clara County, California.  Except as expressly admitted, Defendants deny the allegations of Paragraph 10 of the Complaint, and Defendants specifically deny that Stephen Guggenheim "is an owner, member, and employee of Defendant Guggenheim Entertainment, LLC."

11.     Defendants lack sufficient knowledge or information to form a belief as to the truth and extent of Plaintiff's alleged authorship of the works contained in *The Jar of Fools: Eight Hanukkah Stories from Chelm* ("*The Jar of Fools*"), but note that the "Author's Note" to *The Jar of Fools* expressly admits that the book contains "retellings of traditional Yiddish tales" and "adaptations of stories from other traditions," and aver that Paragraph 11 of the Complaint contains contradictory allegations that Plaintiff is both "the author" of *The Jar of Fools* but that each story therein has a traditional basis.  Defendants admit that the publicly-available database of the United States Copyright Office, accessible at the URL <http://www.copyright.gov/records/cohm.html> (last visited June 16, 2007), identify Plaintiff as the claimant of registration certificate number TX-5-302-608.  Defendants lack sufficient knowledge or information to form a belief as to the truth of Plaintiff's claims of ownership and validity of any copyright or registration thereof, and therefor, of whether that copyright subsists, and Defendants note that the Copyright Office database record for registration certificate number TX-5-302-608 appears to represent that no copy was sent to the copyright deposit warehouse

1   with the registration.  Defendants admit that *The Jar of Fools* contains short stories set in Chelm,

2   and aver that whether each such story "tell[s] a heartwarming and endearing tale" is a matter of

3   opinion to which no response is required.  Defendants lack sufficient knowledge or information

4   to form a belief as to the truth of the allegation that *The Jar of Fools* "was first published by

5   Scholastic Inc. in or around November 2001," but note that the Copyright Office database record

6   for registration certificate number TX-5-302-608 appears to represent that *The Jar of Fools* was

7   first published by Holiday House in 2000.  Except as expressly admitted, Defendants deny the

8   allegations of Paragraph 11 of the Complaint.

9       12.     Defendants admit that the language quoted in Paragraph 12 of the Complaint is

10  contained on the cited web page.  Except as expressly admitted, Defendants deny the allegations

11  of Paragraph 12 of the Complaint.

12      13.     Defendants admit that Scott and Shannon Guggenheim are the sole members of

13  Guggenheim Entertainment, LLC.  Except as expressly admitted, Defendants deny the

14  allegations of Paragraph 13 of the Complaint.

15      14.     Defendants admit that the language quoted in Paragraph 14 of the Complaint is

16  contained on the cited web page.

17      15.     Defendants admit that the language quoted in Paragraph 15 of the Complaint is

18  contained on the cited web page.

19      16.     Defendants admit that Guggenheim Entertainment's client list at

20  <http://www.guggyent.com/about/clientlist.html> (last visited June 16, 2007) identifies malls

21  and other businesses, and that the language quoted in Paragraph 16 of the Complaint is contained

22  on the cited web page.  Except as expressly admitted, Defendants deny the allegations of

23  Paragraph 16 of the Complaint.

24      17.     Defendants admit that Guggenheim Entertainment formed The National Jewish

25  Theatre Festival (the "NJTF"), which presents the performances of *The MeshugaNutcracker!*.

26  Except as expressly admitted, Defendants deny the allegations of Paragraph 17 of the Complaint.

27      18.     Defendants admit the allegations of Paragraph 18 of the Complaint.

28      19.     Defendants admit the allegations of Paragraph 19 of the Complaint.

20.     Defendants admit that the language quoted in Paragraph 20 of the Complaint is contained on the cited web page.  Except as expressly admitted, Defendants deny the allegations of Paragraph 20 of the Complaint.

21.     Defendants admit that the language quoted in Paragraph 21 of the Complaint is contained on the cited web page.  Except as expressly admitted, Defendants deny the allegations of Paragraph 21 of the Complaint, and expressly deny that Stephen Guggenheim was involved in the creation of the book or lyrics for *The MeshugaNutcracker!*.

22.     Defendants admit that certain portions of the script for *The MeshugaNutcracker!* are based on certain portions of *The Jar of Fools*, and that certain short passages in the script for *The MeshugaNutcracker!* contain identical language as certain short passages in *The Jar of Fools*.  Except as expressly admitted, Defendants deny the allegations of Paragraph 22 of the Complaint.

23.     Defendants admit that *The MeshugaNutcracker!* is a musical, which includes songs, including lyrics.  Except as expressly admitted, Defendants deny the allegations of Paragraph 23 of the Complaint, and expressly deny that Stephen Guggenheim was involved in the creation of the book or lyrics for *The MeshugaNutcracker!*.

24.     Defendants admit that the language quoted in Paragraph 24 of the Complaint is contained on the cited web page.  Except as expressly admitted, Defendants deny the allegations of Paragraph 24 of the Complaint.

25.     Defendants admit that *The MeshugaNutcracker!* was performed publicly during the 2003, 2004, 2005, and 2006 seasons.  Defendants further admit that variations among live performances are inevitable, that the identical audiences did not attend every single performance, that not every character was played by the same actor at every single performance, that the performances were held in various venues, and that certain portions of the script changed over time.  Defendants admit that the prices paid by audiences (including any box office fees) for the performances of *The MeshugaNutcracker!* ranged from free (*i.e.*, $0) to $43 per ticket.  Except as expressly admitted, Defendants deny the allegations of Paragraph 25 of the Complaint.

26.     Defendants admit that Exhibit C to the complaint identifies certain entities as

1    "corporate sponsors" and "community sponsors."  Defendants admit that Exhibit D to the

2    complaint states that certain "businesses contributed greatly to the success of the Chanukah

3    festival."  Defendants admit that certain of the entities identified in Exhibits C and D provided

4    donations in kind, discounted products or services, coupons, and the like during rehearsals and

5    performances of *The MeshugaNutcracker!* to Defendants Guggenheim Entertainment.  Except as

6    expressly admitted, Defendants deny the allegations of Paragraph 26 of the Complaint.

7         27.    Defendants admit that they recorded certain songs performed in *The*

8    *MeshugaNutcracker!* and reproduced certain recordings of those songs in compact disc form as

9    "The Original Cast Recording of *The MeshugaNutcracker!*" (the "CD").  Defendants admit that

10   Guggenheim Entertainment has sold approximately 50 copies of the CD, typically at a price of

11   $18 to $20, and admit that they have offered the CD for sale by mail for $25, including shipping

12   and handling.  Defendants admit that Guggenheim Entertainment has distributed approximately

13   150 copies of the CD without charge.  Except as expressly admitted, Defendants deny the

14   allegations of Paragraph 27 of the Complaint.

15        28.    Defendants admit that *The MeshugaNutcracker!* has received positive press

16   coverage.  Except as expressly admitted, Defendants deny the allegations of Paragraph 28 of the

17   Complaint.

18        29.    Defendants deny the allegations of Paragraph 29 of the Complaint.

19        30.    Defendants admit that Guggenheim Entertainment, Scott Guggenheim, and/or

20   Shannon Guggenheim engaged in licensing discussions with Plaintiff.  Except as expressly

21   admitted, Defendants deny the allegations of Paragraph 30 of the Complaint.

22        31.    Defendants deny the allegations of Paragraph 31 of the Complaint.

23        32.    Defendants admit that in July 2006, Scott and Shannon Guggenheim filed articles

24   of organization for Guggenheim Entertainment, LLC with the California Secretary of State.

25   Except as expressly admitted, Defendants deny the allegations of Paragraph 32 of the Complaint.

26        33.    Defendants admit that Exhibit E is an electronic mail message from Scott

27   Guggenheim to Plaintiff, and that the final form of a long-term license agreement covering

28   prospective expanded production of *The MeshugaNutcracker!* "was never agreed upon."  Except

1    as expressly admitted, Defendants deny the allegations of Paragraph 33 of the Complaint.

2        34.    Defendants deny the allegations of Paragraph 34 of the Complaint.

3
4                                   **CLAIM ONE**
                         **COPYRIGHT INFRINGEMENT**
                       **(By Kimmel Against All Defendants)**
5

6        35.    Defendants repeat and incorporate by reference, as though fully set forth herein,

7    their responses to Paragraphs 1 through 34 of the Complaint.

8        36.    Defendants lack sufficient knowledge or information to form a belief as to the

9    truth and extent of Plaintiff's alleged authorship of *The Jar of Fools* or any story contained

10   therein, but note that the "Author's Note" to *The Jar of Fools* expressly admits that the book

11   contains "retellings of traditional Yiddish tales" and "adaptations of stories from other

12   traditions," and aver that Paragraph 11 of the Complaint contains contradictory allegations that

13   Plaintiff is both "the author" of *The Jar of Fools* but that each story therein has a traditional

14   basis.  Defendants admit that the publicly-available database of the United States Copyright

15   Office, accessible at the URL <http://www.copyright.gov/records/cohm.html> (last visited June

16   16, 2007), identify Plaintiff as the claimant of registration certificate number TX-5-302-608, but

17   lack sufficient knowledge or information to form a belief as to the truth of Plaintiff's claims of

18   ownership and validity of any copyright or registration thereof, and therefore, of whether that

19   copyright subsists.  Except as expressly admitted, Defendants deny the allegations of Paragraph

20   36 of the Complaint.

21       37.    Defendants admit that Scott and Shannon Guggenheim had access to *The Jar of

22   Fools* no later than 2003, and were aware of Plaintiff's claims of authorship, and the limitations

23   on those claims, identified therein, and in particular, in the "Author's Note."  Except as expressly

24   admitted, Defendants deny the allegations of Paragraph 37 of the Complaint.

25       38.    Defendants deny the allegations of Paragraph 38 of the Complaint, and expressly

26   deny that Stephen Guggenheim was involved in the creation of the book or lyrics for *The

27   MeshugaNutcracker!*.

28       39.    Defendants deny the allegations of Paragraph 39 of the Complaint, and

1    specifically assert that Defendants' disputed conduct commenced more than three years prior to

2    filing of the Complaint.

3    40.    Defendants deny the allegations of Paragraph 40 of the Complaint, and expressly

4    deny that Stephen Guggenheim was involved in the creation of the book or lyrics for *The*

5    *MeshugaNutcracker!*.

6    41.    Defendants deny the allegations of Paragraph 41 of the Complaint.

7

**CLAIM TWO**
**MISAPPROPRIATION OF THE RIGHT OF PUBLICITY**
**(By Kimmel Against All Defendants)**

8

9

10    42.    Defendants repeat and incorporate by reference, as though fully set forth herein,

11    their responses to Paragraphs 1 through 41 of the Complaint.

12    43.    Defendants admit that, pursuant to the parties' agreements, certain materials

13    related to *The MeshugaNutcracker!* credit Plaintiff and other authors.  Defendants lack sufficient

14    knowledge or information to form a belief as to the truth of whether Plaintiff is "a well-known

15    author."  Except as expressly admitted, Defendants deny the allegations of Paragraph 43 of the

16    Complaint, and expressly deny that Stephen Guggenheim was involved in advertising or

17    promoting *The MeshugaNutcracker!*.

18    44.    Defendants admit that, pursuant to the parties' agreements, certain materials

19    related to *The MeshugaNutcracker!* credit Plaintiff and other authors.  Except as expressly

20    admitted, Defendants deny the allegations of Paragraph 44 of the Complaint, and expressly deny

21    that Stephen Guggenheim was involved in creation or publication of any relevant portion of any

22    press release or other marketing material or playbill for *The MeshugaNutcracker!*.

23    45.    Defendants admit that, pursuant to the parties' agreements, certain materials

24    related to *The MeshugaNutcracker!* state that Plaintiff "collaborated" in the creation of *The*

25    *MeshugaNutcracker!*.  Except as expressly admitted, Defendants deny the allegations of

26    Paragraph 45 of the Complaint, and expressly deny that Stephen Guggenheim was involved in

27    creation or publication of any relevant portion of any marketing material for *The*

28    *MeshugaNutcracker!*.

46.    Defendants deny the allegations of Paragraph 46 of the Complaint.

47.    Defendants deny the allegations of Paragraph 47 of the Complaint.

**CLAIM THREE**
**FALSE ENDORSEMENT AND FALSE ASSOCIATION**
**(By Kimmel Against All Defendants)**

48.    Defendants repeat and incorporate by reference, as though fully set forth herein, their responses to Paragraphs 1 through 47 of the Complaint.

49.    Defendants lack sufficient knowledge or information to form a belief as to the truth of Plaintiff's claimed "economic interest" and rights in *The Jar of Fools*.  Defendants deny the legal conclusion that "[e]ach of these interests is akin to the right of a trademark owner." Defendants deny the other allegations of Paragraph 49 of the Complaint.

50.    Defendants deny the allegations of Paragraph 50 of the Complaint, and expressly deny that Stephen Guggenheim was involved in creation or publication of any relevant portion of any marketing material for *The MeshugaNutcracker!*.

51.    Defendants deny the allegations of Paragraph 51 of the Complaint, and expressly deny that Stephen Guggenheim was involved in creation or publication of any relevant portion of any marketing material for *The MeshugaNutcracker!*.

52.    Defendants deny the allegations of Paragraph 52 of the Complaint, and expressly deny that Stephen Guggenheim was involved in creation or publication of any allegedly false assertion.

53.    Defendants deny the allegations of Paragraph 53 of the Complaint.

54.    Defendants deny the allegations of Paragraph 54 of the Complaint.

**CLAIM FOUR**
**UNFAIR COMPETITION**
**(By Kimmel Against All Defendants)**

55.    Defendants repeat and incorporate by reference, as though fully set forth herein, their responses to Paragraphs 1 through 54 of the Complaint.

56.    Defendants deny the allegations of Paragraph 56 of the Complaint.

57.    Defendants deny the allegations of Paragraph 57 of the Complaint.

## SEPARATE DEFENSES

As separate and distinct defenses to the Complaint, and to each and every purported claim thereof, Defendants allege:

### First Separate Defense

The Complaint, and each and every purported claim for relief thereof, fail to state a claim for relief against Defendants, or any of them.

### Second Separate Defense

The Complaint, and each and every purported claim for relief thereof, are barred in whole or in part because of the doctrines of acquiescence, laches, estoppel, waiver, and/or unclean hands.

### Third Separate Defense

The Complaint, and each and every purported claim for relief thereof, are barred in whole or in part because there is no direct and proximate causal connection between any claims of harm or injury to Plaintiff and any acts alleged to have been committed by Defendants.

### Fourth Separate Defense

Plaintiff's equitable claims are barred in whole or in part because Plaintiff has not suffered any irreparable injury.

### Fifth Separate Defense

Plaintiff's equitable claims are barred in whole or in part because Plaintiff has an adequate remedy at law.

### Sixth Separate Defense

Plaintiff's equitable claims are barred in whole or in part because the hardship that would be imposed on Defendants by the requested relief is greatly disproportionate to any hardship that Plaintiff might suffer in its absence.

1

***Seventh Separate Defense***

2          Plaintiff's equitable claims are barred in whole or in part because the public interest

3   would be disserved by an injunction.

4

***Eighth Separate Defense***

5          Defendants are informed and believe, and on that basis allege, that the Complaint, and

6   each and every purported claim for relief contained therein, are barred by the applicable statutes

7   of limitation, including but not limited to 17 U.S.C. § 207(c).

8

***Ninth Separate Defense***

9          Defendants are informed and believe, and on that basis allege, that Plaintiff's claims are

10  barred in whole or in part because any acts or omissions of which Plaintiff complains were

11  licensed by or otherwise performed with the authority, permission and consent of Plaintiff.

12

***Tenth Separate Defense***

13         Defendants are informed and believe, and on that basis allege, that Plaintiff's claims, and

14  in particular the purported claim for copyright infringement, are barred in whole or in part

15  because the copyright that Plaintiff asserts in this action is invalid and/or unenforceable.

16

***Eleventh Separate Defense***

17         Plaintiff's claims are barred in whole or in part because Defendants' alleged conduct

18  constitutes fair use.

19

***Twelfth Separate Defense***

20         Plaintiff's claims are barred in whole or in part because even if Defendants might be

21  found to have infringed any valid copyright, which Defendants deny, any such infringement was

22  de minimus.

23

***Thirteenth Separate Defense***

24         Plaintiff's state law claims are preempted in whole or in part, including under 17 U.S.C.

25  § 301.

26

27

**<u>COUNTERCLAIMS</u>**

28         58.    Defendants repeat and incorporate by reference, as though fully set forth herein,

-11-

Paragraphs 1 through 57 above.

**PARTIES**

59.     Defendants are informed and believe, and based thereon allege, that Plaintiff is an individual residing at 2525 Northeast 35th Avenue, Portland, Oregon.

60.     Defendant and Countercomplainant Guggenheim Entertainment, LLC is a limited liability company, organized under the laws of the State of California, having a principal place of business at 1165 Bucknam Court in Campbell, California.

61.     Defendant and Countercomplainant Scott Guggenheim is an individual who resides in Santa Clara County, California and is an owner and member of Defendant Guggenheim Entertainment, LLC.

62.     Defendant and Countercomplainant Shannon Guggenheim is an individual who resides in Santa Clara County, California and is an owner and member of Defendant Guggenheim Entertainment, LLC.

63.     Defendant and Countercomplainant Stephen Guggenheim is an individual who resides in Santa Clara County, California.

**JURISDICTION**

64.     Defendants assert their Counterclaims pursuant to Rule 13 of the Federal Rules of Civil Procedure and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction over all Counterclaims herein pursuant to 28 U.S.C. § 1367(a) and the principles of supplemental jurisdiction, and has subject matter jurisdiction over the First Counterclaim under 28 U.S.C. §§ 1331 and 1338(a).

**STATEMENT OF FACTS**

65.     In 2002, the Albert L. Schultz Jewish Community Center (the "ALSJCC), in Palo Alto, contacted Scott and Shannon Guggenheim.  The ALSJCC was interested in exploring the creation of a theatre company that would serve the ALSJCC and other Jewish Community

ANSWER AND COUNTERCOMPLAINT; CASE NO. C 07-02751 CRB

1    Centers in the Bay Area, and were specifically interested in the creation of a theatre presentation

2    that would address the "December dilemma" – namely, presenting and maintaining Jewish

3    identity in the face of media and cultural saturation during the weeks leading up to Christmas.

4    That afternoon, Shannon Guggenheim came up with the title *The MeshugaNutcracker!*, and Scott

5    Guggenheim created the framework for the musical:  pairing musical selections from

6    Tchaikovsky's "Nutcracker Suite" with a script and lyrics that celebrated Chanukah, designed

7    for a family audience.

8        66.    With the ALSJCC serving as the lead agency, the other San Francisco, Santa

9    Clara and Marin County non-profit Jewish Community Centers were invited to form a

10   consortium to create the National Jewish Theatre Festival (the "NJTF").  *The*

11   *MeshugaNutcracker!* would be the first creation of the NJTF, traveling among the Jewish

12   Community Centers.

13       67.    The Jewish Community Centers' initial attempts to find funding for the creation

14   and marketing of the NJTF and *The MeshugaNutcracker!* appeared to bear fruit.  However,

15   shortly after the Koret Foundation, a Bay Area Jewish Nonprofit, committed to fund the

16   development of the musical, the ALSJCC lost its facility and more than a dozen staff members.

17   The sudden instability of the lead organization in the NJTF, and the fact that no other Jewish

18   Community Center was prepared to assume the lead position, caused the Koret Foundation to

19   withdraw its promised support, and the proposed consortium dissolved.  Despite this setback,

20   Scott and Shannon Guggenheim believed that there was genuine demand for a Jewish cultural

21   experience during December, and continued to develop the program as the NJTF.

22       68.    As originally conceived, *The MeshugaNutcracker!* was to tell the complete story

23   of Chanukah.  The broad outline of the Chanukah story is well known in Jewish tradition.  About

24   2200 years ago, the kingdom of Syria extended over what is now Israel.  A new king took the

25   throne, and over time, effectively outlawed Judaism, culminating in an order that an altar to Zeus

26   be erected in the Jewish Temple in Jerusalem.  After years of bloody battles, the Jews, led by

27   Judah Maccabee, retook and cleansed the Temple.  Although there was only enough ceremonial

28   oil to light the menorah in the Temple for a single day, it lasted for eight days – enough time to

1  prepare more oil.  The eight-day festival of Chanukah followed, commemorating the retaking of

2  the temple and the miracle of the oil.

3      69.    In researching the Chanukah story, Scott and Shannon Guggenheim learned that

4  while the broad outline of the Chanukah story was perfectly palatable, the details of the story –

5  which, after all, celebrates a hard-fought and bloody military victory – were hardly suitable for

6  the family audiences to which the play was to be presented.  But an alternative presented itself in

7  the Jewish Folklore of Chelm.  In Eastern European Jewish tradition, the wise and foolish souls

8  were to be distributed equally throughout the world, but through a mishap, all the foolish souls

9  were deposited in Chelm.  Among their other eccentricities, the Chelmniks were said to wear

10  pots and pans as armor in case of war – an affectation that Scott and Shannon Guggenheim

11  believed would aid them in presenting at least a hint of the war themes surrounding Chanukah

12  with an element of humor.  The outlines of the plot for *The MeshugaNutcracker!* became firmer:

13  eight stories celebrating Chanukah told by characters from Chelm.  The beginning and ending

14  scenes would deal with the Maccabian war, while the content between would celebrate

15  Chanukah celebrations and traditions around the globe and over time.

16      70.    In or about August 2003, Scott and Shannon Guggenheim contacted six authors

17  who had created Chanukah and/or Chelm-themed work that might work well with the themes of

18  the production.  The original intention was to have far more than eight stories scripted, and to

19  present a different set of stories each year.  Each of the six authors responded with interest.

20      71.    Plaintiff was one of the authors whom Scott and Shannon Guggenheim contacted

21  in or about August 2003.  Because they could not locate Plaintiff's email address, they initially

22  contacted him by phone.

23      72.    On or about August 26, 2003, Plaintiff responded by email to Scott and Shannon

24  Guggenheim's telephone call, indicating his "delight" that they were considering basing one of

25  the scenes of *The MeshugaNutcracker!* on one of those contained in *The Jar of Fools*.  Plaintiff

26  directed Scott and Shannon Guggenheim to his publisher and agent, asked them to "let me know

27  what develops," and promised to "help in any way I can."  On the same day, Scott and Shannon

28  Guggenheim responded by email, requesting further information, including what royalties, if

any, might be requested.  The same email noted the similarities among various Chelm stories, and the difficulty in determining whether and from whom permissions to use those stories might be necessary.

73.    On or about September 3, 2003, Scott and Shannon Guggenheim spoke by telephone with Plaintiff's agent, Christopher Schelling ("Schelling").  By a follow-up email, they requested permission "to workshop the production this winter without any fees," in exchange for which fees would be "renegotiat[ed] if we determine that there is a future production."  As a good faith effort to provide some additional benefit to Plaintiff, they offered to make *The Jar of Fools* available for sale at the performances and to promote the book otherwise.  They also repeated their concerns regarding whether and from whom permissions might be necessary where Plaintiff and other authors had published similar stories.

74.    After further communications between and among the parties and Schelling, on or about September 9, 2003, Schelling, acting as Plaintiff's agent, granted option rights for the entire *Jar of Fools* – not merely the single story about which Scott and Shannon Guggenheim had inquired initially – and waived any royalties for the initial workshop productions of *The MeshugaNutcracker!*, conditioned on further "negotiat[ion] [of] an option fee should another production be planned."  Schelling asked Scott Guggenheim whether he "ha[d] an agreement [he] used for the other writers," who responded that no written form agreements existed; the other authors had simply requested copies of the playbill.  Although Scott and Shannon Guggenheim did "not have a boiler plate agreement" for Plaintiff to sign, they asked Schelling whether he "ha[d] anything specific that you would like stated" and requested some "idea of what type of option fee you think will be needed."  On information and belief, Schelling did not respond to that message.

75.    Had Plaintiff declined to grant rights, *The MeshugaNutcracker!* would have been based on Chelm stories by authors who had granted rights, or would have been created as original works.  In reliance on Plaintiff's agreement, via Schelling, to permit a royalty-free workshop development and performance of *The MeshugaNutcracker!*, Scott and Shannon Guggenheim invested hundreds of hours in creating the script and lyrics for the workshop run of

*The MeshugaNutcracker!*.  Plaintiff had, via Schelling, granted rights in the entire *Jar of Fools*, rather than the single story identified in their initial request.  In reliance on that grant, Scott and Shannon Guggenheim based additional scenes on stories contained in *The Jar of Fools*, rather than the single story they had originally contemplated.

76.    On or about September 9, 2003, Scott and Shannon Guggenheim sent Schelling a draft writing intended to formally memorialize the parties' agreement, including terms providing for royalty-free performance of the pilot production and Plaintiff's credit.  When Schelling failed to respond, Scott and Shannon Guggenheim again sent Schelling the proposed draft on or about October 21, 2003.  After Schelling still failed to respond, Scott and Shannon Guggenheim contacted Plaintiff directly, and on or about October 30, 2003, he responded by deferring to Schelling.  On or about November 4, 2003, Schelling sent an email apologizing for failing to respond and promising to do so by November 7, 2003.  Schelling never responded.

77.    Between December 20, 2003 and December 28, 2003, ten workshop performances of the then-current version of *The MeshugaNutcracker!* were presented at the Cubberly Theatre in Palo Alto.  Accounting only for "hard" costs – *i.e.*, excluding any value for any efforts by Scott or Shannon Guggenheim, or for any bartered value – the expenses incurred in presenting the December 2003 workshop performances exceeded revenues by over $20,000.

78.    On or about August 27, 2004, Scott and Shannon Guggenheim again contacted Plaintiff's agent, Schelling, by electronic mail copied to Plaintiff.  That electronic mail message sought to ensure that permissions were in place for the planned performances, planned for "December 7-25 in the San Francisco Bay Area," and also offered copies of the script and other materials.  Although Schelling was out of the country, Plaintiff responded on or about August 30, 2004 with an offer of "any further help" and representing that he had asked Schelling "to get right on it."  Scott and Shannon Guggenheim responded by again offering a copy of *The MeshugaNutcracker!* script, which was in the process of revision.  When Plaintiff accepted the offer, a copy was sent.

79.    On or about October 14, 2004, Schelling sent an email to Scott and Shannon Guggenheim representing that he had responded to their emails "a few weeks" prior, but

1    understood that they had not received it.  He requested "a copy of the agreement you've used for

2    the other contributors, I'll look it over and get Eric to sign it."  On the same day, Scott and

3    Shannon Guggenheim responded that the only draft agreement in hand was the one that they had

4    forwarded to Schelling the previous year.  They also advised Schelling of their intention to

5    "mov[e] forward with a limited run this winter," and their "hope to eventually make the

6    production available to others to producer [*sic*]."  Schelling responded by requesting another

7    copy of the prior year's draft agreement, which Scott provided by electronic mail on or about

8    October 15, 2004.

9        80.    On October 18, 2004, Schelling, acting as Plaintiff's agent, sent a revised

10    proposed agreement offering to "grant one-time non-exclusive theatrical adaptation rights in this

11    selection in the English language for the premier run of the Musical and a promotional CD <u>only</u>,"

12    on a royalty-free basis, with a specific requirement that Plaintiff receive named credit in a

13    specified form.  The October 18, 2004 letter specifically invited Scott and Shannon Guggenheim

14    to "Please sign this letter to indicate your acceptance of the terms as listed herein."

15        81.    No later than November 12, 2004, Scott Guggenheim signed the letter as

16    requested, thereby accepting Plaintiff's offer, and returned the October 18, 2004 proposed

17    agreement to Schelling.

18        82.    Based on what they believed at the time, and believe now, to be an enforceable

19    license, Scott and Shannon Guggenheim proceeded to revise the script of and perform *The*

20    *MeshugaNutcracker!*, create and distribute limited numbers of a promotional CD, all the while

21    crediting Plaintiff as required by his agent, Schelling.  They continued to invest hundreds of

22    hours in developing, rehearsing, and performing the play, all without any compensation.  In

23    addition, they agreed to produce a Christmas show at Bonfante Gardens (now Gilroy Gardens), a

24    theme park in Gilroy – a production for which they typically would have charged approximately

25    $20,000 – in exchange for free rental of the Showtime Theatre at Paramount's Great America in

26    Santa Clara for rehearsal and performances of *The MeshugaNutcracker!*.  The arrangement with

27    Paramount's Great America, like all other "sponsorship" arrangements over the life of *The*

28    *MeshugaNutcracker!*, thus consisted solely of in-kind exchange, rather than any monetary

ANSWER AND COUNTERCOMPLAINT; CASE NO. C 07-02751 CRB

1    assistance.

2        83.    Between December 7, 2004 and December 26, 2004, 13 performances of the then-

3    current version of *The MeshugaNutcracker!* were presented at the Showtime Theatre at

4    Paramount's Great America in Santa Clara.  Accounting only for "hard" costs – *i.e.*, excluding

5    any value for any efforts by Scott or Shannon Guggenheim, or for any bartered value, such as the

6    free rental for the Showtime Theatre – the expenses incurred in presenting the 2004 season of

7    *The MeshugaNutcracker!* exceeded revenues by nearly $30,000.

8        84.    In June 2005, attorney Harold Milstein of the law firm Heller Ehrman

9    ("Milstein"), on behalf of Scott and Shannon Guggenheim, contacted Schelling, seeking to

10    formalize arrangements for the 2005 season of *The MeshugaNutcracker!* and beyond.  On or

11    about June 27, 2005, Schelling requested a proposed royalty, to which Milstein responded by

12    providing a draft Copyright License Agreement, which proposed a paid up royalty of $500.00.

13    On or about July 7, 2005, Milstein left a voicemail for Schelling, in which he again proposed a

14    paid-up royalty of $500.00.

15        85.    On or about July 28, 2005, when Schelling had not responded, Scott Guggenheim

16    sent an electronic mail message to Plaintiff, copied to, *inter alia*, Milstein and Schelling.  The

17    email noted that Milstein had been unsuccessful in obtaining a response from Schelling, and

18    requested Plaintiff's assistance.  Plaintiff responded later that day, stating that although he

19    wanted "to help you out," he was upset at "finding myself in the middle."  Despite the fact that

20    Milstein already had expressly proposed a $500.00 paid-up license fee at least two times,

21    Plaintiff represented that Schelling had told him that Scott and Shannon Guggenheim had not yet

22    made "a specific money proposal."  Plaintiff urged Scott and Shannon Guggenheim to follow up

23    vigorously with Schelling:  "Call him. Nudge him. Scream at him. He's an agent; he can take it."

24        86.    On or about August 4, 2005, Milstein and Schelling talked by telephone as

25    representatives of Scott and Shannon Guggenheim and Plaintiff, respectively.  In this telephone

26    call, Schelling agreed, on behalf of Plaintiff, to accept $500 as a paid-up royalty for the license to

27    *The Jar of Fools*.

28        87.    On or about August 10, 2005, Milstein sent a proposed draft to Schelling intended

-18-

1    to formalize the parties' agreement.  Schelling responded that he had agreed to production of "a

2    very limited number of CDs they [Scott and Shannon Guggenheim] wanted to do themselves,

3    along with the ability to produce the show with other companies," but that he could not have

4    Plaintiff grant all media rights for an indefinite term for $500.00.  Accordingly, Schelling

5    proposed that the agreement cover a defined term, at the end of which the parties could negotiate

6    further rights.

7            88.    On or about September 7, 2005, Milstein sent a revised draft agreement to

8    Schelling by electronic mail, proposing a five-year term.  On or about September 28, 2005, when

9    Schelling had not yet responded, Milstein sent a follow-up email requesting his comments on the

10   proposed revised agreement.  When Schelling still did not respond, on or about October 12,

11   2005, Scott Guggenheim again emailed Plaintiff, requesting his assistance in expediting

12   formalizing the agreement, and offering to promote Plaintiff's works during the 2005 season of

13   performances.

14           89.    On or about October 13, 2005, Schelling responded by proposing that the agreed

15   $500 fee cover a two-year limited license, rather than five.  The scope of that license included at

16   least all performances staged by Defendants over the following two years – *i.e.*, at least through

17   the 2006 season of *The MeshugaNutcracker!*.

18           90.    Between December 1, 2005 and January 1, 2006, 22 performances of the then-

19   current version of *The MeshugaNutcracker!* were presented in Berkeley, Sacramento, San

20   Francisco, and Los Angeles.  Accounting only for "hard" costs – *i.e.*, excluding any value for

21   any efforts by Scott or Shannon Guggenheim, or for any bartered value – the expenses incurred

22   in presenting the 2005 season of *The MeshugaNutcracker!* exceeded revenues by more than

23   $17,000.

24           91.    On or about October 13, 2006, Milstein again sent a proposed revised draft

25   agreement to Schelling.  The October 13, 2006 draft proposed converting the earlier $500.00

26   paid-up license into a flat, up-front fee, accompanied by "a 5% royalty on licensing fees received

27   for third party productions of live performances," as well as "a royalty of 10¢ per copy of video

28   or soundtrack recordings beyond the first 1000 copies."  On or about October 17, 2006, Schelling

ANSWER AND COUNTERCOMPLAINT; CASE NO. C 07-02751 CRB

1  responded that he would review the agreement with Plaintiff and respond, but expressed

2  reservations about "the expansive nature of the agreement."  That same day, Milstein responded

3  that although the revised "proposal does cover more than live productions of the work," it

4  "included specific compensation provisions to share any upside these additional activities might

5  yield."  Milstein concluded by requesting Schelling's comments.

6      92.    On or about October 31, 2006, because Schelling had not yet responded, Milstein

7  sent another electronic mail message, asking whether Schelling had "had a chance to discuss" the

8  draft with Plaintiff.  Schelling again failed to respond.

9      93.    On or about November 28, Defendants are informed and believe, and based

10  thereon allege, that Milstein again called Schelling to inquire as to the status of the proposed

11  agreement.  Schelling responded by electronic mail, stating that the matter "has been turned over

12  to Eric Kimmel's lawyer."

13      94.    Between December 11, 2006 and December 31, 2006, 12 performances of the

14  then-current version of *The MeshugaNutcracker!* were presented in Sacramento, Los Angeles,

15  Seattle, San Jose, Phoenix, and San Francisco.  Accounting only for "hard" costs – *i.e.*, excluding

16  any value for any efforts by Scott or Shannon Guggenheim, or for any bartered value – the

17  expenses incurred in presenting the 2006 season of *The MeshugaNutcracker!* exceeded revenues

18  by more than $25,000.

19      95.    On or about December 18, 2006, Milstein and Daniel Ballard ("Ballard") spoke

20  by telephone in an effort to reach an overall agreement regarding prospective expanded

21  production and other exploitation of *The MeshugaNutcracker!*.  Ballard also expressed concern

22  that on or about December 15, 2006, the NJTF website apparently failed to credit Plaintiff.  By

23  follow-up email, Ballard requested documentation for the number of performances of *The*

24  *MeshugaNutcracker!* and the receipts for those performances.  In further electronic mail

25  communications, Milstein and Ballard discussed further potential terms, and Milstein agreed to

26  provide information regarding past performances after the close of the 2006 season of *The*

27  *MeshugaNutcracker!*.

28      96.    During the first part of 2007, Scott and Shannon Guggenheim supplied

1   information requested by Ballard, including documentation that Plaintiff had been credited

2   during the entire run of *The MeshugaNutcracker!*, and detailed expense, profit and loss reports

3   for all 57 performances over four seasons.  Despite Scott and Shannon Guggenheim's continued

4   attempts to reach and formalize agreements providing for expanded production and further

5   exploitation of *The MeshugaNutcracker!*, and to share those benefits with Plaintiff, negotiations

6   broke down, and Plaintiff filed the instant lawsuit.  In June 2006, the NJTF website was changed

7   to formally reflect that the 2007 season of *The MeshugaNutcracker!* had been cancelled due to

8   this lawsuit.

9       97.    All told, during the four seasons in which *The MeshugaNutcracker!* was

10  produced, without accounting for the income they have foregone by bartering their professional

11  services in exchange for performance and rehearsal space and other needs of *The*

12  *MeshugaNutcracker!*, or for the thousands of uncompensated hours they have invested in the

13  play, Scott and Shannon Guggenheim have absorbed "hard" losses totaling more than $90,000 –

14  more than their entire taxable income over the same period, and an average of more than $1500

15  for each performance.  Absent Plaintiff's actual or apparent permission to do so, Scott and

16  Shannon Guggenheim would not have based any portion of *The MeshugaNutcracker!* on any

17  portion of *The Jar of Fools*.  Having relied on Plaintiff's promises to their detriment, they are left

18  with the 2007 season canceled and the future of the play in limbo, despite years of effort and

19  investment.

**FIRST COUNTERCLAIM FOR DECLARATORY JUDGMENT
OF COPYRIGHT NONINFRINGEMENT AND UNENFORCEABILITY
(by All Defendants against Kimmel)**

23      98.    Defendants repeat and incorporate by reference, as though fully set forth herein,

24  Paragraphs 1 through 97 above.

25      99.    There is an actual justiciable controversy between Plaintiff and Defendants

26  concerning the validity of Plaintiff's purported copyright in *The Jar of Fools* and Plaintiff's

27  allegation that Defendants have infringed that copyright.

28      100.   Plaintiff claims to be the present owner of a "valid and subsisting" copyright in

ANSWER AND COUNTERCOMPLAINT; CASE NO. C 07-02751 CRB

*The Jar of Fools*.  Plaintiff has alleged that Defendants are liable for infringing that purported copyright, as set forth in the Complaint.

101.    Defendants have not infringed, are not infringing, and are in no way liable for infringement of, Plaintiff's purported copyright in *The Jar of Fools*, as set forth specifically in its denials, factual contentions, and Separate Defenses above, all of which are incorporated here by reference.  Absent a declaration of non-infringement of Plaintiff's purported copyright in *The Jar of Fools*, Plaintiff will continue to assert that Defendants have infringed that purported copyright and will in this way cause damage to Defendants.

102.    Defendants are informed and believe, and on that basis allege, that Plaintiff's purported copyright in *The Jar of Fools* is invalid or void under one or more sections of Title 17 of the United States Code, as set forth specifically in its denials, factual contentions, and Separate Defenses above, all of which are incorporated here by reference.  Absent a declaration that Plaintiff's purported copyright is invalid or void, Plaintiff will continue to assert that Defendants have infringed that copyright and will in this way cause damage to Defendants.

103.    By this Counterclaim, Defendants seek a declaratory judgment that they have not infringed and are not infringing and are not otherwise liable for any alleged indirect infringement of Plaintiff's purported copyright in *The Jar of Fools*, and further that such purported copyright is invalid or void.

**SECOND COUNTERCLAIM FOR DECLARATORY JUDGMENT
OF NO MISAPPROPRIATION OF THE RIGHT OF PUBLICITY
(by All Defendants against Kimmel)**

104.    Defendants repeat and incorporate by reference, as though fully set forth herein, Paragraphs 1 through 103 above.

105.    There is an actual justiciable controversy between Plaintiff and Defendants concerning whether Defendants used Plaintiff's name and identity to advertise or promote *The MeshugaNutcracker!* and promotional CDs therefore, and if so, whether Plaintiff permitted or consented to such use.

106.    Defendants have not used Plaintiff's name and identity to advertise or promote

1    *The MeshugaNutcracker!* and promotional CDs therefor, but if they did, Plaintiff permitted or

2    consented to such use, as set forth specifically in its denials, factual contentions, and Separate

3    Defenses above, all of which are incorporated here by reference.

4        107.    Absent a declaration of non-infringement of Plaintiff's purported copyright in *The*

5    *Jar of Fools*, Plaintiff will continue to assert that Defendants have misappropriated Plaintiff's

6    right of publicity and will in this way cause damage to Defendants.

7        108.    By this Counterclaim, Defendants seek a declaratory judgment that they have not

8    misappropriated Plaintiff's right of publicity.

9

10    **THIRD COUNTERCLAIM FOR DECLARATORY JUDGMENT**
**OF NO FALSE ENDORSEMENT AND FALSE ASSOCIATION**
**(by All Defendants against Kimmel)**

11

12        109.    Defendants repeat and incorporate by reference, as though fully set forth herein,

13    Paragraphs 1 through 108 above.

14        110.    There is an actual justiciable controversy between Plaintiff and Defendants

15    concerning whether Defendants' assertions that Plaintiff collaborated in the creation of *The*

16    *MeshugaNutcracker!* by, *inter alia*, granting permission to adapt portions of *The Jar of Fools* in

17    creating *The MeshugaNutcracker!* and to perform the play, are false.

18        111.    Defendants claims regarding the fact and extent of Plaintiff's permission and role

19    in creating *The MeshugaNutcracker!* are true, as set forth specifically in its denials, factual

20    contentions, and Separate Defenses above, all of which are incorporated here by reference.

21        112.    Absent a declaration that Defendants have not falsely claimed endorsement by or

22    association with Plaintiff, Plaintiff will continue to assert that Defendants have falsely claimed

23    endorsement by or association with Plaintiff and will in this way cause damage to Defendants.

24        113.    By this Counterclaim, Defendants seek a declaratory judgment that they have not

25    falsely claimed endorsement by or association with Plaintiff.

26

27

28

## FOURTH COUNTERCLAIM FOR DECLARATORY JUDGMENT
## OF NO UNFAIR COMPETITION
### (by All Defendants against Kimmel)

114.    Defendants repeat and incorporate by reference, as though fully set forth herein, Paragraphs 1 through 113 above.

115.    There is an actual justiciable controversy between Plaintiff and Defendants concerning whether Defendants' engaged in common law unfair competition with Plaintiff.

116.    Defendants have not unlawfully obtained the benefit of Plaintiff's goodwill and reputation and commercial opportunities, as set forth specifically in its denials, factual contentions, and Separate Defenses above, all of which are incorporated here by reference.

117.    Absent a declaration that Defendants have not unlawfully obtained the benefit of Plaintiff's goodwill and reputation and commercial opportunities, Plaintiff will continue to assert that Defendants have unlawfully obtained the benefit of Plaintiff's goodwill and reputation and commercial opportunities and will in this way cause damage to Defendants.

118.    By this Counterclaim, Defendants seek a declaratory judgment that they have not unlawfully obtained the benefit of Plaintiff's goodwill and reputation and commercial opportunities.

## FIFTH COUNTERCLAIM FOR DECLARATORY JUDGMENT THAT
## A BINDING AND ENFORCEABLE CONTRACT EXISTS BETWEEN THE PARTIES
### (by Guggenheim Entertainment, LLC, Scott Guggenheim,
### and Shannon Guggenheim against Kimmel)

119.    Defendants repeat and incorporate by reference, as though fully set forth herein, Paragraphs 1 through 118 above.

120.    In or about August 2003, Plaintiff and Scott and Shannon Guggenheim entered preliminary negotiations regarding the possible adaptation of portions of *The Jar of Fools* into portions of *The MeshugaNutcracker!*.

121.    On or about September 9, 2003, Plaintiff's agent, Christopher Schelling, agreed by electronic mail to waive any royalties for the initial productions of *The MeshugaNutcracker!*, conditioned on further negotiation "should another production be planned."  Because, as all

1   parties were necessarily aware, the initial production could not be accomplished without first

2   creating a script and lyrics, this electronic mail message inherently licensed Defendants to create

3   the script and lyrics as well.

4       122.    On October 18, 2004, Plaintiff's agent Schelling proposed a formal written letter

5   agreement, which "grant[ed] one-time non-exclusive theatrical adaptation rights in this selection

6   in the English language for the premier run of the Musical and a promotional CD <u>only</u>," on a

7   royalty-free basis, and included a specific requirement that Plaintiff receive named credit.  Scott

8   Guggenheim accepted and returned this proposed agreement no later than November 12, 2004.

9   In addition, the parties executed this proposed agreement by performance thereunder.

10       123.    The written contract of the parties is contained in these documents and the parties'

11   other correspondence, sent and received in the ordinary course of business using electronic mail

12   and other means, as set forth specifically in Defendants' denials, factual contentions, and

13   Separate Defenses above, all of which are incorporated here by reference.

14       124.    Defendants have performed all conditions, covenants, and promises required on

15   their part to be performed in accordance with the terms and conditions of the contract.  Although

16   the parties never successfully formalized a further license to cover prospective expanded

17   production of *The MeshugaNutcracker!*, at all times, Defendants negotiated in good faith to

18   reach such an agreement.

19       125.    There is an actual justiciable controversy between Plaintiff and Defendants

20   concerning whether a valid and enforceable contract between the parties exists.  In particular, the

21   Complaint alleges, *inter alia*:  (a) that Defendants never had any relevant license,

22   notwithstanding the parties contract; (b) that all Defendants' productions of *The*

23   *MeshugaNutcracker!* constituted copyright infringement, notwithstanding that Plaintiff and/or

24   his agent expressly granted permission for such productions; (c) that the creation and distribution

25   of the promotional CD for *The MeshugaNutcracker!* constituted copyright infringement,

26   notwithstanding Plaintiff's agent's express grant in October 2004 of permission to create and

27   distribute that CD; and (d) that crediting Plaintiff violated Plaintiff's right of publicity, and

28   constituted false endorsement, false association, and unfair competition, notwithstanding, *inter*

ANSWER AND COUNTERCOMPLAINT; CASE NO. C 07-02751 CRB

1   *alia*, the parties' contract, including Plaintiff's agent's express requirement in October 2004 that

2   Plaintiff be so credited, as well as Plaintiff's December 2006 demand, via his attorney Ballard,

3   when, by error, all credits (including Plaintiff's) were temporarily removed from the NJTF

4   website, that Plaintiff's credit be restored.

5       126.    Absent a declaration that the parties entered one or more contracts licensing the

6   adaptation of portions of *The Jar of Fools* for incorporation in the script and lyrics of *The*

7   *MeshugaNutcracker!*, for subsequent performance of those works, for creation and distribution

8   of the promotional CD, and requiring that Plaintiff be credited, Plaintiff will continue to assert

9   that Defendants have no license and will in this way cause damage to Defendants.

10      127.    By this Counterclaim, Defendants seek a declaratory judgment that the parties

11  have entered one or more enforceable contracts licensing the adaptation of portions of *The Jar of*

12  *Fools* for incorporation in *The MeshugaNutcracker!*, for subsequent performance of those works,

13  for creation and distribution of the promotional CD, and requiring that Plaintiff be credited.

14

15              **SIXTH COUNTERCLAIM FOR PROMISSORY ESTOPPEL**
                **(by Guggenheim Entertainment, LLC, Scott Guggenheim,**
16              **and Shannon Guggenheim against Kimmel)**

17      128.    Defendants repeat and incorporate by reference, as though fully set forth herein,

18  Paragraphs 1 through 127 above.

19      129.    On or about September 9, 2003, Plaintiff's agent, Christopher Schelling, promised

20  by electronic mail to waive any royalties for the initial productions of *The MeshugaNutcracker!*,

21  conditioned on further negotiation "should another production be planned."  Because, as all

22  parties were necessarily aware, the initial production could not be accomplished without first

23  creating a script and lyrics, this electronic mail message inherently promised that Defendants

24  could create the script and lyrics as well.  In so doing, Defendants are informed and believe that

25  Plaintiff and/or his agent knew or should have known that Defendants would be reasonably

26  induced to rely on this promise by creating the script and lyrics for and performing *The*

27  *MeshugaNutcracker!*.

28      130.    On October 18, 2004, Plaintiff's agent Schelling promised to "grant[] one-time

non-exclusive theatrical adaptation rights in this selection in the English language for the premier

run of the Musical and a promotional CD <u>only</u>," on a royalty-free basis, and specifically required

that Plaintiff receive named credit. In so doing, Defendants are informed and believe that

Plaintiff and/or his agent knew or should have known that Defendants would be reasonably

induced to rely on this promise by performing *The MeshugaNutcracker!*, creating and

distributing a promotional CD, and crediting Plaintiff as required.

131. In 2005, Plaintiff's agent Schelling, knowing that preparation for the 2005 season

of *The MeshugaNutcracker!* was in process, promised that Guggenheim Entertainment would

receive a formal license that would cover at least all performances staged by Defendants through

the inception of this suit. In so doing, Defendants are informed and believe that Plaintiff and/or

his agent knew or should have known that Defendants would be reasonably induced to rely on

this promise by preparing and performing the 2005 and 2006 seasons of *The*

*MeshugaNutcracker!*, continuing limited distribution of the promotional CD, and crediting

Plaintiff as had been formally required in 2004.

132. Plaintiff's promises are contained in these documents and the parties' other

correspondence, sent and received in the ordinary course of business using electronic mail and

other means, as set forth specifically in Defendants' denials, factual contentions, and Separate

Defenses above, all of which are incorporated here by reference.

133. Defendants reasonably relied on Plaintiff's promises and were induced to create

the script and lyrics to *The MeshugaNutcracker!*, perform the musical publicly, promote those

performances, and create and distribute a promotional CD.

134. Plaintiff has not performed according to his promises, and has filed this suit in

blatant disregard of those promises.

135. As a proximate result of Plaintiff's failure to perform according to his and/or his

agent's promises, Defendants Guggenheim Entertainment and Scott and Shannon Guggenheim

have invested substantial time and money to develop the script for, present performances of,

record and distribute cast recordings of, and promote *The MeshugaNutcracker!*.

136. Injustice can be avoided only by enforcing Plaintiff's and/or his agent's promises

1    completely.

2         137.   There is an actual justiciable controversy between Plaintiff and Defendants

3    concerning whether the doctrine of promissory estoppel applies.  In particular, the Complaint

4    alleges, *inter alia*:  (a) that Defendants never had any relevant license, notwithstanding Plaintiff's

5    promises thereof; (b) that all Defendants' productions of *The MeshugaNutcracker!* constituted

6    copyright infringement, notwithstanding that Plaintiff and/or his agent expressly granted or

7    promised to grant permission for such productions; (c) that the creation and distribution of the

8    promotional CD for *The MeshugaNutcracker!* constituted copyright infringement,

9    notwithstanding Plaintiff's agent's express grant or promise to grant in October 2004 of

10   permission to create and distribute that CD; and (d) that crediting Plaintiff violated Plaintiff's

11   right of publicity, and constituted false endorsement, false association, and unfair competition,

12   notwithstanding, *inter alia*, Plaintiff's promises and demands, including Plaintiff's agent's

13   express requirement in October 2004 that Plaintiff be so credited, and Plaintiff's December 2006

14   demand, via his attorney Ballard, when, by error, all credits (including Plaintiff's) were

15   temporarily removed from the NJTF website, that Plaintiff's credit be restored.

16        138.   By this Counterclaim, Defendants seek a declaratory judgment that, under the

17   doctrine of promissory estoppel, Plaintiff has granted a license or its equitable equivalent for the

18   adaptation of portions of *The Jar of Fools* for incorporation in *The MeshugaNutcracker!*, for

19   subsequent performance of those works, and for creation and distribution of the promotional CD,

20   and has permitted or required that Plaintiff be so credited.

21
22   **SEVENTH COUNTERCLAIM FOR DECLARATORY JUDGMENT OF ESTOPPEL**
     **(by All Defendants against Kimmel)**

23
24        139.   Defendants repeat and incorporate by reference, as though fully set forth herein,

25   Paragraphs 1 through 138 above.

26        140.   At all relevant times, Plaintiff knew the relevant facts concerning Defendants'

27   allegedly infringing conduct of which he now complains.  Yet, from 2003 – when Defendants

28   Guggenheim Entertainment and Scott and Shannon Guggenheim began to develop the present

1  script for *The MeshugaNutcracker!* – until the Complaint was filed, Plaintiff never requested that

2  Defendants cease the alleged infringements on which the Complaint is based, and Defendants

3  reasonably believed that Plaintiff consented to, licensed, approved, or otherwise permitted such

4  conduct pending formalization of a license that would cover prospective expanded production of

5  *The MeshugaNutcracker!*.

6      141.    Defendants are informed and believed, and based thereon allege, that Plaintiff

7  never requested that Defendants cease the conduct on which the Complaint is based because

8  Plaintiff intended that Defendants continue to act as described.  Alternatively, and even if

9  Plaintiff did not intend that Defendants cease the conduct on which the Complaint is based,

10  Defendants reasonably believed that Plaintiff did not intend that Defendants cease the conduct on

11  which the Complaint is based.

12      142.    Defendants were ignorant of Plaintiff's alleged denial or withdrawal of consent,

13  license, approval, or other permission.

14      143.    Defendants acted in reliance on Plaintiff's apparent consent, license, approval, or

15  other permission of their conduct that Plaintiff now alleges as the basis for the Complaint.

16  Defendants reliance was to their injury and prejudice, including but not limited to Defendants

17  Guggenheim Entertainment and Scott and Shannon Guggenheim's investments of substantial

18  time and money to develop the script for, present performances of, record and distribute cast

19  recordings of, and promote *The MeshugaNutcracker!*.

20      144.    Absent a declaration that Plaintiff is estopped from preventing Defendants from

21  presenting performances of, distributing cast recordings of, and promoting *The*

22  *MeshugaNutcracker!*, Plaintiff will continue to cause damage to Defendants.

23

24  **EIGHTH COUNTERCLAIM FOR DECLARATORY JUDGMENT OF LACHES**
    **(by All Defendants against Kimmel)**

25

26      145.    Defendants repeat and incorporate by reference, as though fully set forth herein,
    Paragraphs 1 through 144 above.

27

28      146.    At all relevant times, Plaintiff knew the relevant facts concerning Defendants'

allegedly infringing conduct of which he now complains.  Yet, from 2003 – when Defendants Guggenheim Entertainment and Scott and Shannon Guggenheim began to develop the present script for *The MeshugaNutcracker!* – until the Complaint was filed, Plaintiff delayed in filed suit.

147.    Plaintiff's delay in filing suit was unreasonable or inexcusable, because Defendants acted in reliance on Plaintiff's apparent consent, license, approval, or other permission of their conduct that Plaintiff now alleges as the basis for the Complaint.  Defendants reliance was to their injury and prejudice, including but not limited to Defendants Guggenheim Entertainment and Scott and Shannon Guggenheim's investments of substantial time and money to develop the script for, present performances of, record and distribute cast recordings of, and promote *The MeshugaNutcracker!*.

148.    Absent a declaration that laches precludes Plaintiff from preventing Defendants from presenting performances of, distributing cast recordings of, and promoting *The MeshugaNutcracker!*, Plaintiff will continue to cause damage to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Defendants prays for judgment against Plaintiff as follows:

1.    For declaratory judgment that Defendants have not infringed any valid copyright by Plaintiff;

2.    For declaratory judgment that Defendants have not misappropriated Plaintiff's right of publicity;

3.    For declaratory judgment that Defendants have not falsely claimed endorsement or association with Plaintiff;

4.    For declaratory judgment that Defendants have not engaged in unfair competition with Plaintiff;

5.    For declaratory judgment that one or more binding and enforceable contracts, or their equitable equivalent, exist between the parties, and for specific performance thereof;

6.    For declaratory judgment that the doctrines of estoppel and laches preclude any recovery by Plaintiff;

7.    For actual damages caused by Plaintiff;

8.    For their reasonable attorney's fees according to proof;

9.    For costs of suit;

10.    For prejudgment interest on all amounts awarded; and

11.    For such other and further relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Defendants hereby demand a trial by jury on all claims set forth above.

Dated: July 13, 2007                                    MAYER, BROWN, ROWE & MAW LLP


By:  _/s/_____
                                                          Joshua M. Masur

                                                          Attorneys for Defendants and Counter-
                                                          Complainants GUGGENHEIM
                                                          ENTERTAINMENT, LLC, SCOTT
                                                          GUGGENHEIM, STEPHEN
                                                          GUGGENHEIM, and SHANNON
                                                          GUGGENHEIM